# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**UNITED STATES OF AMERICA,**

**Appellant,**

-vs-                                                   **Case No.  6:06-cv-1877-Orl-22DAB**

**MICHAEL R. RHODES,**

**Appellee.**

_____

# ORDER

This cause comes before the Court on an Application for Attorney Fees and Expenses by Appellee Michael Rhodes (the "debtor" or "Mr. Rhodes") under the Equal Access to Justice Act (Doc. No. 36), Appellant the United States' Opposition to the motion (Doc. No. 39), and Mr. Rhodes' Reply in further support of his application (Doc. No. 42).  The Court holds that the United States acted with a reasonable basis in law and fact in advancing the position that Mr. Rhodes' debts to the IRS for the years 2000 and 2001 were not dischargeable under 11 U.S.C. § 523(a)(1)(C).  Thus, Mr. Rhodes is not entitled to fees or expenses under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A), and the application is denied.

## Background

Mr. Rhodes and his wife filed a joint bankruptcy petition under chapter 7 of the Bankruptcy Code on December 20, 2005.  Doc. No. 1-8 at p. 1.  At that time, Mr. Rhodes had income tax debts from 2000 in the amount of $924,410.89 and from 2001 in the amount of $171,828.28.  Doc. No. 36 at p. 10.  Mr. Rhodes filed an adversary proceeding against the United

States on February 16, 2006, to have the tax debts declared dischargeable.  Doc. No. 1-8 at pp. 3-4.  The Bankruptcy Court held a bench trial on the issue in June 2006 and found for the debtor in September 2006.  Doc. No. 2-39 at pp. 1-2.  The United States appealed to this Court, and after oral argument, the Court affirmed the Bankruptcy Court's ruling for the debtor on June 14, 2007. Doc. No. 25.  Debtor now applies for attorney's fees and expenses.  Doc. No. 36.

## Analysis

### I.  The Application is Timely

At the outset, the Court held that Mr. Rhodes' application for fees is timely.  The United States claims that "any motion for fees and costs [must] be filed within thirty days of final judgment," pursuant to 28 U.S.C. § 2412(d)(1)(B).  Because the Court entered an Order affirming the bankruptcy court's decision on June 14, 2007, the United States argues, "[t]here are no fees and costs for which appellee can now apply for which the statutory time period has not yet lapsed."  Doc. No. 39 at p. 13.  However, the United States fails to mention 28 U.S.C. § 2412(d)(2)(G), which clearly states that "'final judgment' means a judgment that is final and not appealable . . . ."[1]  In this case, the United States appealed the judgment.  Doc. No. 28.  Thus, it was not a final judgment that would start the clock on the thirty-day time period and render the November 11, 2007 application for fees untimely.

### II.  Equal Access to Justice Act Applies

The parties disagree over whether an application for fees in this case would fall under the Equal Access to Justice Act (28 U.S.C. § 2412(d)(1)(A)) or the similar fee section of the Internal

---

[1]The parties' attorneys must uphold their duty of candor to the Court and not raise statutory arguments that lack merit.  *See* Fla. Rule of Prof'l Conduct 4-3.3; Local Rule 2.04(d).

Revenue Code (26 U.S.C. § 7430(a)), which applies to "any . . . court proceeding . . . brought by the United States in connection with the determination, collection, or refund of any, tax, interest, or penalty" under the Internal Revenue Code.

Because the adversary proceeding sought to determine whether tax debts were to be discharged in bankruptcy and not to "determine, collect, or refund" any tax, the Court holds that the application for fees is properly brought under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A). As the parties point out, the standard for evaluating an award of fees is essentially the same under either section and requires the Court to assess whether the government's position was "substantially justified." Doc. No. 36 at pp. 36-7; Doc. No. 39 at p. 8 n. 2. Thus, whichever statute the Court applies, the analysis and holding would be the same.

## III. Equal Access to Justice Act Standard

The Equal Access to Justice Act states that "a court shall award to a prevailing party . . . fees and other expenses . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The burden is on the United States to show that its position was substantially justified. *City of Brunswick v. United States*, 849 F.2d 501, 504 (11th Cir. 1988). The Supreme Court has interpreted "substantially justified" to mean "justified in substance or in the main- that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565-66 (1988) (citations omitted). Based on that interpretation, the Eleventh Circuit has defined "substantially justified" as having a "reasonable basis in law and fact." *Brunswick*, 849 F.2d at 504. The fact that the United States ultimately lost a case does not mean that its position was not substantially justified. *United States v. Jones*, 125 F.3d 1418, 1427 (11th Cir. 1997).

In assessing whether it was reasonable for the United States to argue that Mr. Rhodes' tax debts should not be discharged, the Court must look to the substantive law governing tax debts in bankruptcy. The bankruptcy code generally provides for a fresh start for the honest and unfortunate debtor through the discharge of all debts. *United States v. Fretz (In re Fretz),* 244 F.3d 1323, 1326 (11th Cir. 2001). However, there are statutory exceptions to the general rule that all debts will be discharged. The bankruptcy code excepts from discharge tax liabilities when the debtor "willfully attempted in any manor to evade or defeat such tax." 11 U.S.C. § 523(a)(1)(C)

Such a violation has both a conduct requirement and a mens rea requirement. *Fretz*, 244 F.3d at 1327; *see also United States v. Jacobs (In re Jacobs)*, 490 F.3d 913, 921 (11th Cir. 2007). The conduct requirement is satisfied "where a debtor engaged in affirmative acts to avoid payment or collection of taxes." *Fretz*, 244 F.3d at 1329 (citations omitted). The mens rea requirement is met where the debtor: (1) had a duty under the law; (2) knew he had that duty; and (3) voluntarily and intentionally violated that duty. *Griffith v. United States (In re Griffith)*, 206 F.3d 1389, 1396 (11th Cir. 2000) (citations omitted). Because most debtors have a duty to pay taxes and are aware of that duty, discharge of tax debts often hinges on whether the debtor "voluntarily and intentionally violated" his duty. *Id*. The mens rea of willfulness can be shown by "badges of fraud," such as the understatement of income, implausible or inconsistent explanations of behavior, inadequate records, transfer of assets to a family member, transfer for inadequate consideration, and transfer that greatly reduces assets subject to IRS execution. *Hassan v. United States (In re Hassan)*, 301 B.R. 614, 620 (S.D. Fla. 2003); *see also Jacobs*, 490 F.3d at 924. The Eleventh Circuit has explicitly stated that fraudulent intent is not required to prove the requisite mens rea. *Fretz*, 244 F.3d at 1330 (citations omitted).

-4-

**IV.  The United States' Argument That the Debts Were Not Dischargeable Under 11 U.S.C. § 523(a)(1)(C) was Reasonable**

**A.  Mens Rea Requirement**

At the outset of this case, it was not clear whether Mr. Rhodes met the mens rea requirement of willful evasion under 11 U.S.C. § 523(a)(1)(C).  Mr. Rhodes admits that he spent $3500 on plastic surgery in 2003, took annual golf trips of $2000 each, and put $240,000 from his business's account into his wife's checking account for the family's living expenses.  *See* Bankruptcy Trial Transcript pp. 66-67 (Doc. No. 2-43), 150 (Doc. No. 2-44), 156, 159-165, 169-71 (Doc. No. 2-45).  Additionally, Mr. Rhodes and his wife transferred joint title of their home to his wife alone.  Doc. No. 2-39 at pp. 4-5.  Mr. Rhodes explained that the transfer was to use his wife's better credit rating to obtain a better interest rate on a new mortgage, not to evade taxes.  *Id*.  The Bankruptcy Court ultimately believed this explanation.  *Id*.  However, in other cases, courts have held similar acts to be indicative of willful evasion of taxes.  The fact that Mr. Rhodes transferred the title in his home, coupled with his expenditures from 2001 to the present, substantially justified the government's position that Mr. Rhodes' 2000 and 2001 tax debts were not dischargeable.

In *Jacobs*, 490 F.3d at 917-18, a debtor put his residence in his wife's name because of his bad credit rating, paid large golf club fees, bought his wife $20,000 worth of plastic surgery, made payments to his children and charities, and had his business write checks to his wife.  The Eleventh Circuit held that these actions "overwhelmingly" showed that the debtor "willfully attempted to evade or defeat his taxes within the meaning of § 523(a)(1)(C)."  *Jacobs*, 490 F.3d at 925.  The debtor's actions in *Jacobs* parallel Mr. Rhodes' actions, except that the debtor in

*Jacobs* acted on a grander scale, purchasing $20,000 in plastic surgery instead of Mr. Rhodes' $3500, paying more for golf, and generally living more lavishly. *Id.* The Eleventh Circuit's decision in *Jacobs* is a good indication that the United States was substantially justified in challenging the discharge of Mr. Rhodes' debts.

Because the Eleventh Circuit decided *Jacobs* after this Court affirmed the bankruptcy court's ruling for Mr. Rhodes, the United States did not have the Eleventh Circuit's opinion in *Jacobs* when it decided to take the position that Mr. Rhodes' tax debts were not dischargeable. Still, the government's position was reasonable without guidance by the *Jacobs* Court. The Eleventh Circuit in *Jacobs* reiterated principles that had been spelled out in *Griffith*, 206 F.3d at 1396, and *Hassan,* 301 B.R. at 620, rather than announcing new principles of law.

Furthermore, numerous earlier cases similarly indicate that the Government's position was substantially justified. In *Griffith*, 206 F.3d at 1396, the Eleventh Circuit held that intra-family transfers of property in an attempt to evade collection of taxes were sufficient to render tax debts nondischargeable. *See also United States v. Sternberg (In re Sternberg)*, 229 B.R. 238, 248 (S.D. Fla. 1998). In *Hassan*, 301 B.R. at 618-19, the fact that the debtors dealt extensively in cash, spent thousands of dollars on property, cars, and travel, and paid money to individuals including their daughter allegedly as "loan repayments," also made their tax debts nondischargeable. The debtors in *Griffith* and *Hassan* acted more egregiously than Mr. Rhodes, but the United States was still substantially justified in relying on those opinions and asserting that the tax debts could not be discharged in this case.

## B.  Conduct Requirement

While failure to pay taxes alone is not sufficient to satisfy the conduct requirement (*In re Haas*, 48 F.3d 1153, 1158 (11th Cir. 1995)[2]), the conduct requirement is satisfied when a debtor engages in affirmative acts to avoid payment or collection of taxes.  *Fretz*, 244 F.3d at 1329 (citing *Griffith*, 206 F.3d at 1393-96).  In *Griffith*, the Bankruptcy Court found that the debtor's transfer of property to his wife was made for the purpose of evading taxes, meeting the conduct requirement.  In the case at hand, the Bankruptcy Court ultimately found that Mr. Rhodes transferred title in his home to his wife, not for the purpose of evading taxes but instead to obtain a better interest rate.  Doc. No. 2-39 at p. 4.  The Bankruptcy Court decided that the conduct requirement was not met, but it was reasonable at the outset of the suit for the United States to question whether Mr. Rhodes had an intent to evade taxes.

---

[2]As the Eleventh Circuit Court explained in *Griffith*, 206 F.3d at 1392, 1395-96, the *Haas* decision was abrogated to the extent that it required a willful attempt to avoid the assessment of a tax (rather than just an attempt to avoid payment) under 11 U.S.C. §523(a)(1)(C).  The Eleventh Circuit in *Griffith* reaffirmed the part of *Haas* that held mere nonpayment of taxes insufficient to prevent discharge of those tax debts as willful evasion.  *Griffith*, 206 F.3d at 1395-96.

**Conclusion**

While the Bankruptcy Court found Mr. Rhodes to be an "honest but unfortunate debtor," *Fretz*, 244 F.3d at 1326 (citations omitted), the facts of the case mimic those in cases where courts have found willful tax evasion. *See Jacobs*, 490 F.3d at 925-26; *Hassan*, 301 B.R. at 618, 620; *Griffith*, 206 F.3d at 1392, 1396. Thus, the United States was substantially justified in pursuing the claim that Mr. Rhodes' tax liabilities were not dischargeable, even though the United States was ultimately unsuccessful.

Based on the foregoing, it is ORDERED that Appellee's Application for Attorney Fees and Expenses (Doc. No. 36), filed November 11, 2007, is DENIED.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on April 7, 2008.

Copies furnished to:
Counsel of Record

ANNE C. CONWAY
United States District Judge